**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------------------x

In re

PILLOWTEX CORPORATION, *et al.*[1],

Debtors.

Chapter 11

(Jointly Administered)
Case No. 03-12339 (PJW)

-----------------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF PILLOWTEX CORPORATION,

Plaintiff,

- against -

SEASON SPIRIT (N.C.) INC.,
a/k/a SEASON SPIRIT, INC.,

Defendant.

Adv. Proc. No. 05-

-----------------------------------------------------------------------x

## COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND/OR FRAUDULENT TRANSFERS, DISALLOW ANY CLAIMS, RECOVER DAMAGES FROM DEFENDANT'S WILLFUL VIOLATION OF THE AUTOMATIC STAY, CONVERSION AND BREACH OF CONTRACT AND FOR OTHER RELIEF

Plaintiff, the Official Committee of Unsecured Creditors ("Plaintiff" or the "Committee")

of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and

through their co-counsel, Hahn & Hessen LLP and Blank Rome LLP, hereby files this Complaint

to Avoid and Recover Preferential and/or Fraudulent Transfers, Disallow Any Claims, Recover

Damages from Defendant's Willful Violation of the Automatic Stay, Conversion and Breach of

Contract and For Other Relief, in support thereof, states:

---

[1]   In addition to Pillowtex Corporation, the other debtors are Beacon Manufacturing Company, Encee,
Inc., FC Online, Inc., FCC Canada, Inc., FCI Corporate LLC, FCI Operations LLC, Fieldcrest Cannon
Financing, Inc., Fieldcrest Cannon Licensing, Inc., Fieldcrest Cannon Transportation, Inc., Fieldcrest
Cannon, Inc., The Leshner Corporation, Opelika Industries, Inc., PTEX Holding Company, PTEX,
Inc. and Tennessee Woolen Mills, Inc.

119222.01600/21410768v.1

## NATURE OF THE ACTION

1.      This is an adversary proceeding brought in the above-captioned bankruptcy cases pursuant to Part VII of the Bankruptcy Rules seeking to (a) avoid certain preferential and/or fraudulent transfers made by the Debtors to the above-captioned defendant, Season Spirit (N.C.) Inc., a/k/a Season Spirit, Inc., ("SSI") and to recover the value thereof, pursuant to 11 U.S.C. (the "Bankruptcy Code") §§ 547, 548, 550 and 551; (b) disallow any claims that SSI filed or scheduled pursuant to section 502(d) of the Bankruptcy Code; (c) recover actual damages, including costs and attorneys' fees, as well as punitive damages pursuant to section 362(h) of the Bankruptcy Code for SSI's willful violation of the automatic stay; (d) recover actual damages, including costs and attorneys' fees, as well as punitive damages arising from SSI's willful conversion of Debtors' property; (e) recover actual damages, including costs and attorneys' fees, from SSI's breach of contract; and (f) recover attorneys' fees and disbursements that have been incurred by the Committee and the Debtors.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

3.      This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. § 157(a).

4.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

5.      Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

- 2 -

## PARTIES

6.      On July 30, 2003 (the "Petition Date"), the Debtors filed with this Court their petitions for relief under Chapter 11 of the Bankruptcy Code.

7.      On August 11, 2003, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Debtors' cases.

8.      Since the Petition Date, the Debtors have been managing their affairs and conducting their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.      On March 31, 2005, this Court entered an order authorizing the Committee to bring certain causes of action on behalf of the Debtors and their estates, including causes of action to avoid transfers of property under sections 544, 547, 548, 549 and 550 of the Bankruptcy Code.[2]

10.      Upon information and belief, SSI is a corporation or other legal entity whose state of incorporation or formation is presently unknown to the Committee.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF
### (incorporating all previous allegations)

*SSI's Failure to Deliver the Debtors' Property*

11.      On or about December 17, 2001, the Debtors and SSI entered into a certain agreement (the "Supply Agreement"), whereby SSI obtained from its suppliers (the "SSI Suppliers") and provided certain raw materials and other goods (the "Supplied Products") used by the Debtors in connection with their production of certain pillow and pad products.

---

[2]      The Debtors and the Committee will be filing and seeking court approval of a stipulation granting the Committee further authorization and standing to bring any and all additional actions that the Debtors may have against SSI.

12.     Prior to June 28, 2003, the Debtors paid SSI the amount of $5,309,133.47 (the "Payments") in accordance with section 2 of the Supply Agreement with respect to certain aged inventory of Supplied Products (the "Paid Goods").  Upon receipt of the Payments, SSI did not release or deliver the Paid Goods to the Debtors.

13.     After making the Payments and prior to the Petition Date, the Debtors requested that SSI release and/or deliver the Paid Goods to the Debtors.

14.     Prior to the Petition Date, although the Debtors remitted the Payments for the Paid Goods and SSI acknowledged receipt of such payments, SSI refused to release and/or deliver the Paid Goods to the Debtors.

15.     Upon information and belief, SSI refused to release and/or deliver the Paid Goods or refund the Payments to the Debtors despite being aware that the Debtors filed for bankruptcy on July 30, 2003.

16.     On August 13, 2003, counsel for the Debtors sent a letter (the "Demand Letter") to SSI specifically demanding that SSI either release and deliver the Paid Goods to the Debtors or refund the Payments.[3]  The Debtors informed SSI that the Paid Goods were "property of the estate" under Bankruptcy Code § 541(a).  Furthermore, the Debtors informed SSI that (a) their refusal to deliver the Paid Goods was a violation of the automatic stay under Bankruptcy Code § 362 and (b) if they did not immediately release and deliver the Paid Goods to the Debtors or refund the Payments, the Debtors would seek actual damages (including attorneys' fees) arising out of SSI's breach of the Supply Agreement and violation of the automatic stay and also punitive damages pursuant to section 362(h) of the Bankruptcy Code.

---

[3]     A true and accurate copy of the Demand Letter is attached as Exhibit "A".

17.    On February 20, 2004, SSI and the Debtors entered into the Stipulation and Order for Release and Delivery of Goods, Reservation of Rights and Procedure for Resolution of Dispute (the "Stipulation"), whereby *inter alia* SSI agreed to release the Paid Goods to the Debtors.  Pursuant to the Stipulation, the Paid Goods would be released "as soon as practicable" in multiple shipments.

18.    Upon information and belief, the Paid Goods were released and recovered by the Debtors in multiple shipments between March 23, 2004 and May 1, 2004.

*The Debtors' Liquidation*

19.    On the Petition Date, the Debtors filed a motion for an Order Establishing Procedures for Miscellaneous Asset Sales (the "Sale Motion") seeking procedures to allow the Debtors to liquidate their inventory.

20.    On August 20, 2003, the Court entered an Order Establishing Procedures for Miscellaneous Asset Sales (the "Sale Order"), approving the Sale Motion as modified with respect to a limited objection by the Committee.

21.    Pursuant to the Sale Order, the Debtors liquidated nearly their entire inventory (the "Inventory") during August - October of 2003 (the "Liquidation Sale").  The Inventory was liquidated for a substantial portion of its cost.

22.    Upon information and belief, the Debtors made several attempts to obtain possession of the Paid Goods prior to the Liquidation Sale, but SSI refused to release or deliver them to the Debtors.  As the Paid Goods were not returned until March 23, 2004 at the earliest, the Debtors were unable to sell the Paid Goods with the Inventory at the Liquidation Sale.

23.    After the Paid Goods were returned to the Debtors, more than five months after the Liquidation Sale was concluded, the Debtors conducted a follow-up sale (the "Paid Goods

Liquidation Sale") between May and September 2004, whereby the Debtors sold only the Paid

Goods.  The Paid Goods were sold for approximately $1,100,000, roughly 20% of their cost.

***The Avoidable Transfers***

24.     On or within 90 days prior to the Petition Date (the "Preference Period"),

Pillowtex Corporation ("Pillowtex"), one of the Debtors, made one or more transfers to or for the

benefit of SSI, as set forth on Exhibit "B" annexed hereto (the "Transfers").

25.     Exhibit "B" reflects the Committee's present knowledge of the transfers made to

SSI.  During the course of this proceeding the Committee may learn (through discovery or

otherwise) of additional transfers made by the Debtors to SSI during the Preference Period.  It is

the Committee's intention to avoid and recover all such transfers, whether such transfers

presently are reflected on Exhibit "B" or not.  Collectively, all transfers made by the Debtors of

an interest of the Debtors in property to or for the benefit of SSI during the Preference Period

(whether such transfers presently are reflected on Exhibit "B" hereto or not) are referred to

herein as the "Transfers".

## FIRST CAUSE OF ACTION
### (Preference Claim Against SSI)

26.     The Committee repeats and realleges paragraphs "1" through "25" hereof as if

fully set forth herein.

27.     The Transfers were made within 90 days prior to the Petition Date.

28.     The Transfers were transfers of an interest of one or more of the Debtors in

property.

29.     The Transfers were made to or for the benefit of SSI, a creditor of one or more of

the Debtors.

119222.01600/21410768v.1

30.     The Transfers were made for or on account of antecedent debts owed to SSI by one or more of the Debtors before such Transfers were made.

31.     The Transfers were made while the Debtors were insolvent.

32.     The Transfers enabled SSI to receive more than SSI would receive if: (i) the Debtors' cases were cases under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) SSI received payment on account of the debt paid by the Transfers to the extent provided by the provisions of the Bankruptcy Code.

33.     The Transfers constitute preferential transfers which should be avoided as preferences pursuant to Bankruptcy Code § 547 and are recoverable from SSI pursuant to Bankruptcy Code § 550.

## SECOND CAUSE OF ACTION
### (Fraudulent Transfer Claim Against SSI)

34.     The Committee pleads this Second Cause of Action in the alternative and restates and realleges the allegations of paragraphs "1" through "25" above as if fully set forth herein. Plaintiff brings this Second Cause of Action in the event that SSI asserts that one or more of the Transfers was made on behalf of a Debtor other than the Debtor that was owed the corresponding antecedent debt.

35.     The Transfers constitute transfers of an interest of Pillowtex in property.

36.     Pillowtex received less than a reasonably equivalent value in exchange for the Transfers.

37.     Pillowtex (i) was insolvent on the date that the Transfers were made, or became insolvent as a result of such Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Pillowtex was an

unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond Pillowtex's ability to pay as such debts matured.

38.     The Transfers constitute fraudulent transfers which should be avoided pursuant to Bankruptcy Code § 548 and are recoverable from SSI pursuant to Bankruptcy Code § 550.

### THIRD CAUSE OF ACTION
### (Disallowance of SSI's Proofs of Claim or Scheduled Claims)

39.     The Committee restates and realleges the allegations of paragraphs "1" through "38" above as if fully set forth herein.

40.     SSI is an entity from which property is recoverable under section 550 of the Bankruptcy Code and is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code.

41.     SSI has not paid the amount, or turned over such property, for which SSI is liable under section 550 of the Bankruptcy Code.

42.     Any and all of SSI's claims against the Debtors, whether contained in proofs of claim or in the Debtors' schedules, should be disallowed until the Transfers are repaid to the Debtors pursuant to section 502(d) of the Bankruptcy Code.

### FOURTH CAUSE OF ACTION
### (Willful Violation of the Automatic Stay)

43.     The Committee restates and realleges the allegations of paragraphs "1" through "23" above as if fully set forth herein.

44.     Section 362 of the Bankruptcy Code "operates as a stay, applicable to all entities, of … (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the

debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect ,assess, or recover a claim against the debtor that arose before the commencement of the case under this title; (7) the setoff of any debtor owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor" after a bankruptcy petition has been filed.

45.     Section 541 of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case …."

46.     The Paid Goods were property of the Debtors' estates.

47.     SSI violated the automatic stay by (a) "exercising control over property of the estate" by refusing to deliver the Paid Goods or refund the Payments to the Debtors after the Debtors filed their bankruptcy petitions; (b) taking actions to "create, perfect, or enforce any lien against property of the estate" by refusing to deliver the Paid Goods or refund the Payments to the Debtors after the Debtors filed their bankruptcy petitions; (c) taking actions to "create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title" by refusing to deliver the Paid Goods or refund the Payments to the Debtors after the Debtors filed their bankruptcy petitions; (d) taking actions to "collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" by refusing to deliver the Paid Goods or refund the Payments to the Debtors after the Debtors filed their bankruptcy petitions; and/or (e) acting to "setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor" by refusing to deliver the Paid Goods or refund the Payments to the Debtors after the Debtors filed their bankruptcy petitions.

48.    Despite being informed by the Debtors in the Demand Letter that their refusal to deliver the Paid Goods or refund the Payments to the Debtors was a violation of the automatic stay under section 362 of the Bankruptcy Code, SSI did not deliver the Paid Goods to the Debtors until at least eight (8) months after the Petition Date and over seven (7) months after the Demand Letter.

49.    Section 362(h) of the Bankruptcy Code permits a party that is "injured by any willful violation of [the automatic stay] … [to] recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

50.    SSI's refusal to deliver the Paid Goods or refund the Payments to the Debtors after receipt of the Demand Letter is a willful violation of the automatic stay under section 362(h) of the Bankruptcy Code.

51.    The Debtors suffered actual damages (the "Actual Damages") because SSI refused to release and/or deliver the Paid Goods to the Debtors until more than six (6) months after the Liquidation Sale was complete.  Due to SSI's refusal to release and/or deliver the Paid Goods prior to the Liquidation Sale, the Debtors were unable to sell the Paid Goods at the Liquidation Sale, at which the Debtors were able to achieve a significant return in relation to the cost of the Inventory.  Instead, the Debtors were forced to conduct a separate sale of only the Paid Goods, seven (7) months after the Liquidation Sale, where the Paid Goods were sold at only 20% of cost (cost of $5,309,133.47, sale for approximately $1,000,000).

52.    The Debtors suffered the Actual Damages as a result of SSI's willful violation of the automatic stay and the Committee, on the Debtors' behalf, is entitled to recover the Actual Damages, plus costs and attorneys' fees, pursuant to Bankruptcy Code § 362(h).

- 10 -

53.     The Committee, on the Debtors' behalf, is entitled to be awarded punitive damages as a result of SSI's willful violation of the automatic stay pursuant to Bankruptcy Code § 362(h).

### FIFTH CAUSE OF ACTION
### (Conversion of the Paid Goods)

54.     The Committee restates and realleges the allegations of paragraphs "1" through "23" and "43" through "53" above as if fully set forth herein.

55.     SSI intentionally retained the Paid Goods for its own use and benefit and refused to deliver them to the Debtors in violation of the Debtors' superior rights therein for the eight (8) months that elapsed from the date of Demand Letter until the Paid Goods were released to the Debtors.

56.     The Debtors' rights in the Paid Goods are superior to any right that may be asserted by SSI.

57.     By the Demand Letter, the Debtors demanded that SSI deliver the Paid Goods to the Debtors.

58.     SSI knowingly and intentionally converted the Paid Goods to the exclusion of the Debtors' rights.

59.     SSI refused to deliver the Paid Goods to the Debtors.

60.     The Debtors suffered the Actual Damages as a result of SSI's conversion of the Paid Goods.

119222.01600/21410768v.1

61.     SSI's actions were willful and evince a reckless and wanton disregard for the Debtors' right to the Paid Goods.[4]

62.     By reason thereof, SSI converted the Paid Goods and the Committee, on behalf of the Debtors, is entitled to a judgment against SSI in the amount of the Actual Damages, plus costs and attorneys' fees, as well as punitive damages for SSI's willful and wanton conduct.

## SIXTH CAUSE OF ACTION
### (Breach of the Supply Agreement)

63.     The Committee restates and realleges the allegations of paragraphs "1" through "23" above as if fully set forth herein.

64.     SSI breached the Supply Agreement by failing to deliver the Paid Goods to the Debtors.

65.     Pursuant to the Supply Agreement, SSI was obligated to release and/or deliver certain goods to the Debtors where the Debtors had paid for those goods.

66.     Pre-petition, the Debtors remitted payment to SSI in the amount of $5,309,133.47, as payment for the Paid Goods, and requested that SSI release and/or deliver the Paid Goods to the Debtors.

67.     Despite the Debtors' payment, SSI refused to deliver the Paid Goods to the Debtors'.

68.     Post-petition, the Debtors demanded that SSI release and/or deliver the Paid Goods to the Debtors, but SSI failed to do so.

---

[4]     Despite the fact that SSI willfully and unlawfully refused to release the Paid Goods to the Debtors during the Conversion Period, SSI filed a secured administrative claim (identified in the claims register as claim # 3225) which appears to seek payment for SSI's warehouse charges relating to its unlawful possession of the Paid Goods during the Conversion Period.

69.    SSI breached the Supply Agreement by failing to release and/or deliver the Paid Goods to the Debtors despite having been paid in full for the Paid Goods.

70.    The Debtors were harmed by SSI's breach of the Supply Agreement and suffered the Actual Damages by being unable to liquidate the Paid Goods at the Liquidation Sale.

71.    By reason thereof, SSI breached the Supply Agreement and the Committee, on behalf of the Debtors, is entitled to a judgment against SSI in the amount of the Actual Damages.

## SEVENTH CAUSE OF ACTION
### (Attorneys' Fees and Disbursements)

72.    The Committee restates and realleges the allegations of paragraphs "1" through "23" and "63" through "71" above as if fully set forth herein.

73.    As a result of SSI's failure to deliver the Paid Goods to the Debtors, the Debtors and the Committee (on the Debtors' behalf) have been required to engage counsel, and expend fees, costs and disbursements in order to enforce the Supply Agreement, obtain delivery of the Paid Good and litigate this action.

74.    The Supply Agreement provided that "[i]n the event of any litigation or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation or other dispute shall be entitled to, in addition to any other damages assessed, its reasonable attorneys' fees, and all other costs and expenses incurred in connection with settling or resolving such dispute."  Supply Agreement, ¶ 19.

75.    Accordingly, SSI is liable and indebted to the Debtors and the Committee (on the Debtors' behalf) for the amount of all of the Committee's and the Debtors' costs and expenses, including attorneys' fees and disbursements, incurred in connection with enforcing the Supply Agreement, obtaining delivery of the Paid Good and litigating this action.

**WHEREFORE,** for the foregoing reasons, the Committee respectfully requests the following relief:

A. on the First Cause of Action, that (i) the Transfers be avoided as preferential transfers under section 547 of the Bankruptcy Code and (ii) judgment be entered in favor of the Committee and against SSI, in an amount of at least $7,695,247.82 (plus such additional transfer amounts that the Committee learns, through discovery or otherwise, were made by the Debtors to SSI during the Preference Period), plus interest at the legal rate from the date of the Transfers, together with all costs of this action;

B. on the Second Cause of Action, that, in the alternative to the First Cause of Action, (i) the Transfers be avoided as fraudulent transfers under section 548 of the Bankruptcy Code and (ii) judgment be entered in favor of the Committee and against SSI, in an amount of at least $7,695,247.82 (plus such additional transfer amounts that the Committee learns, through discovery or otherwise, were made by the Debtors to SSI during the Preference Period), plus interest at the legal rate from the date of the Transfers, together with all costs of this action;

C. on the Third Cause of Action, that any and all of SSI's claims against the Debtors be disallowed until the Transfers are repaid pursuant to 11 U.S.C. § 502(d);

D. on the Fourth Cause of Action, that (i) judgment be entered in favor of the Committee and against SSI for SSI's willful violation of the

- 14 -

automatic stay, in the amount of the Actual Damages, plus costs and attorneys' fees and (ii) punitive damages be awarded;

       E.      on the Fifth Cause of Action, that (i) judgment be entered in favor of the Committee and against SSI for SSI's conversion of the Paid Goods in the amount of the Actual Damages, plus costs and attorneys' fees and (ii) punitive damages be awarded;

       F.      on the Sixth Cause of Action, that judgment be entered in favor of the Committee and against SSI for SSI's breach of the Supply Agreement in the amount of the Actual Damages;

       G.      on the Seventh Cause of Action, that judgment be entered in favor of the Committee and against SSI in the amount of the Committee's and Debtors' reasonable attorneys' fees and other expenses in connection with SSI's breach of the Supply Agreement; and

       H.      for the costs and disbursements of this action and such other relief as the Court deems proper.

Dated:  Wilmington, Delaware
       July 29, 2005

                    **BLANK ROME LLP**

                      */s/ Bonnie Glantz Fatell*
                  Bonnie Glantz Fatell (DE No. 3809)
                  Thomas P. Preston, (DE No. 2548)
                  Jason W. Staib (DE No. 3779)
                  1201 Market Street, Suite 800
                  Wilmington, DE  19801
                  Telephone:   (302) 425-6400
                  Facsimile:   (302) 425-6464

                      -and-

**HAHN & HESSEN LLP**
Mark S. Indelicato, Esq.
Mark T. Power, Esq.
Edward L. Schnitzer, Esq.*
488 Madison Avenue
New York, NY 10022
Telephone:   (212) 478-7200
Facsimile:    (212) 478-7400

*Co-Counsel for The Official Committee of*
*Unsecured Creditors of Pillowtex Corp., et al.*

**\*Edward L. Schnitzer, Esquire of Hahn & Hessen LLP**
**is the attorney primarily responsible for this matter.**
Any inquiries intended for co-counsel, Blank Rome LLP,
should be directed to Thomas P. Preston.

- 16 -